BENJAMIN SELMAN AND OTHERS V. SOLOMON WOLFE.

The navigable streams within the State are public highways, and are exclusively subject to the control of the State; and the legislature is possessed of the authority to obstruct them either wholly or partially, if in its judgment the public interest will be promoted thereby.

But it has always been the settled policy and cherished object of the State to guard its navigable streams from obstruction, and to secure and improve them as the common highways of trade and travel.

This policy will not be held to be abrogated, nor the enactments for its enforcement to be repealed by mere implication; nor will a charter granted by the legislature to individuals to bridge a navigable stream be held to authorize them to obstruct its navigation, unless the right to do so is expressly granted, or necessarily implied in the charter.

Held: That the private act of February 10th, 1858, authorizing B. Selman and others to erect a toll-bridge across the Angelina river, did not confer upon the grantees the right to obstruct the navigation of the stream.

Obstructions to the navigation of a navigable stream, erected without authority of law, are nuisances; and may be abated as such by a private person in virtue of common right.

ERROR from Cherokee. Tried below before the Hon. R. A. Reeves.

This action was brought by the appellants to recover damages from the appellee for removing part of the bridge of the plaintiffs across the Angelina river, so as to permit the boats of the defendant to pass down the stream.

The defendant justified his action in removing part of the bridge for the purpose of allowing his boats to pass, alleging that the bridge was an obstruction to the navigation of the stream, and as such was a nuisance which he had a right to abate.

The jury returned a verdict for the defendant. A motion of the plaintiff for a new trial was overruled.

*Donley & Anderson*, for plaintiffs in error.

*Bonner & Bonner*, for defendant in error.

MOORE, J.—This action was brought by the appellants to recover damages which it is alleged they have sustained from the

injury done by appellee to a bridge erected by them across the Angelina river, under a special and private act of the legislature, passed February 10, 1858. It is evident that the disposition we should make of this case, must depend upon the construction that should be given to this act of the legislature ; we will, therefore, give a copy of it : " An act granting to persons therein named the privilege of erecting a toll-bridge across the Angelina river, and to bridge its sloughs at or near the Buckshot crossing.

"Sec. 1. Be it enacted by the legislature of the State of Texas, that Benj. Selman, Robert F. Mitchell and William Roark, of the county of Cherokee, and Charles H. Finley and William Selman of the county of Nacogdoches, and such associates and successors or assignees as a majority of them may constitute, are hereby authorized to erect a toll-bridge across the Angelina river, and to bridge its sloughs, at what is known as the Buckshot crossing, about five miles below Wolfe's bridge, on the Selman road from Douglass, in Nacogdoches county, to Alto, in the county of Cherokee ; and the above named persons, their associates, successors and assigns, shall be allowed to erect a toll-gate, shall have the right of way and all other rights and privileges necessary to the keeping up said toll-bridge, slough bridges and road through the bottom of said river, for twenty years, provided they shall charge no toll to the citizens of Nacogdoches and Cherokee counties, and not exceeding half the rates usually charged for ferriage across said stream to other persons.

"Sec. 2. Said company shall keep said toll-bridge in good repair, under the direction of the County Court of Nacogdoches county, and this act shall take effect from and after its passage."

It is not controverted that the bridge erected by appellants was injured by appellee, but it is insisted that the Angelina river at and above said bridge was a navigable stream and a public highway, and that appellants had no authority by virtue of said act to erect such a bridge as would impede or obstruct the navigation upon said stream in the manner it had previously been usually and customarily enjoyed ; that the appellants had, by the bridge built by them across said river, obstructed the navigation of the same ; and that appellee had been compelled, for the purpose of

enabling his boats loaded with cotton for himself and others, to pass said bridge with safety, to remove a portion of it.

Numerous cases have been cited by the attorneys for appellants in their elaborate brief, which conclusively show that the navigable streams exclusively within the State, are beyond question the highways of the State, and subject exclusively to its control. The legislature, if in its judgment the public interest will be promoted by so doing, may undoubtedly either partially or wholly obstruct them.   (Commonwealth v. Charlestown, 1 Pick., 180; Hood v. Proprietors of the Brighton Bridge, 2 Mass., 267 ; City of Savannah v. The State, 4 Ga., 26 ; Bailey v. Philadelphia R. R. Co., 4 Harring., 389 ; Thompson, Wilson and others v. Black Bird Creek Marsh Co., 2 Pet., 241 ; United States v. New Bedford Bridge, 1 Woodbury & Minot C. C., 400.)

The question for us to determine here, however, is not whether the legislature has the authority to authorize the building of a bridge across a navigable stream, and thereby obstruct it as a public highway; but whether they have by the act which we have copied, conferred upon appellants the right to do so.   In considering this question we must, as is insisted by appellee's counsel, bear in mind the previous laws in reference to the navigable streams of the State, and especially those relating to the Angelina river.   When we do so, we find that it had been expressly recognized by the legislature as a navigable stream, (see act approved Feb. 7, 1853, extra session 4th leg., p. 21,) and that the sum of three hundred thousand dollars had been appropriated and set apart by the legislature as a special fund for the improvement of the navigable streams of the State, (O. & W., art. 1478,) and that, too, only some eighteen months prior to the passage of the private law, by authority of which appellants claim that they were authorized to obstruct the navigation of one of those very streams for the improvement of which the legislature seemed so solicitious.   The obstruction of the navigable streams of the State had been declared a high misdemeanor, punishable by a heavy penalty.   (Hart. Dig., art. 465; Penal Code, 428.)  And so careful had the legislature been in guarding the right of the citizens to use the navigable streams of the State as common high--

ways, that even the railroads, though owing to their great necessity they have at all times been fostered with the utmost liberality, were forbidden from erecting a bridge or other obstructions " across, in or over any navigable stream, so as to prevent or unreasonably impede the navigation thereof." (O. & W. Dig., art., 1634.)

This brief reference that we have made to a few of the public statutes upon this subject, makes it evident that it had been, previous to the passage of the private act under which appellants claim, the settled policy and cherished object of the State to guard its navigable streams from obstruction, and to secure and improve them as the common highways of trade and travel for such of its citizens as might wish to use them for these purposes. Did the legislature intend by the private act for the benefit of the appellants to change this long settled policy, and to repeal these general public laws so far as they might be applicable to the Angelina river above said bridge? If such was the intention of the legislature they have not manifested it by an express and unequivocal declaration indicating their purpose. And if such of these laws as have direct reference to this stream shall be held to be repealed, and the general policy upon this subject with reference to it must be regarded as abrogated, we shall have to draw these conclusions as matters of inference and deduction from the supposed conflict between the provisions of this private act, and the pre-existing laws. It cannot be said, however, upon a fair and just construction of this private act, that there is any necessary conflict between it and the previous statutes to which we have adverted. There is nothing in the law, nor was there any thing brought to light by testimony during the progress of the case, inducing the supposition that appellants might not, without difficulty, have constructed under their charter such a bridge as would not have obstructed, or interfered with the navigation of the river, as it had previously been customarily and habitually used. But if it were otherwise, and we were forced to seek the legislative intention by a construction of its different enactments upon the subject, there would be but little difficulty in arriving at the conclusion that it was not their intention to authorize appellants to obstruct the navigation of the river.

"A construction," it is said in the case of Neill v. Keese, 5 T., 23, "which repeals former statutes and laws by implication, is not to be favored." (3 Hill, N. Y. R., 472.) Statutes are not considered to be repealed by implication, unless the repugnancy between the new provision and the former statute be plain and unavoidable. (1 Kent's Com., 466, note b.) And in Bryan v. Sundberg, 5 Tex., 418, it is said, "It is also true, that statutes *in pari materia* are to be taken and construed together, because it is to be inferred that they had one object in view, and are intended to be considered as constituting one entire and harmonious system." And again, "When there are different statutes *in pari materia*, though made at different times, or expired, and not referring to each other, they shall be taken and construed together as one system and as explanatory of each other." (King v. Lauderdale, 1 Bur. Rep., 447; Bradshaw v. Tennessee, 1 Yerg., 180; Cain v. The State, 20 Tex., 362; Lovett v. Casey, 17 T., 596; 1 Kent, 463; Smith Com. on Stat. and Const., 751, *et seq.*)

It is, also, a well recognized rule "that private statutes made for the accommodation of particular citizens or corporations, ought not to be construed to affect the rights or privileges of others, unless such construction resulted from express words, or from necessary implication." (Smith Com. on Stat. and Const., 859; Sharp v. Speer, 4 Hill, 76; Sharp v. Johnson, Id., 92; Coolidge v. Williams, 4 Mass., 140; Wales v. Stetson, 2 Id., 143; Hood v. Dighton Bridge, 3 Id., 263; Perry v. Wilson, 7 Id., 393; Thatcher v. Dartmouth Bridge, 18 Pick., 504.)

These well established rules for the construction of statutes, are so conclusive that, if we supposed there could be any doubt as to what was the legislative intention upon the subject, we should feel ourselves constrained by them in the absence of an express repeal of the pre-existing public statutes declaring the Angelina river a navigable stream, and forbidding its obstruction, to hold that the private act intended for the benefit of the appellants did not have that effect.

Whether the bridge was in reality an obstruction to the navigation of the river, was a question of fact which was fairly submitted to the jury, and as there was evidence to support their

verdict, it can not be questioned here. And it is not denied, if. the river was at the time a public highway, and its navigation was obstructed by appellants' bridge without the authority of law, and contrary to the true intent and meaning of said private act, it was in contemplation of law a nuisance, and appellee was authorized to abate it as such. (3 Bl. Com., 6; Renwick v. Morris, 3 Hill, 621; Wetmore v. Tracy, 14 Wend., 250.)

There is no error in the judgment, and it is therefore affirmed.

Judgment affirmed.