G. C. & S. F. R'Y Co. v. JACQUES TACQUARD.

(No. 1918.)

APPEAL from Galveston County.  Opinion by WILL-SON, J.

BALLINGER, MOTT & TERRY, counsel for appellant.

M. E. KLEBERG and WHEELER & RHODES, counsel for appellee.

§ 141. *Condemnation of right of way, etc.; jurisdiction of county court of proceeding for; case stated.*  On the 5th of October, 1883, appellant made application to

the county judge of Galveston county for the condemnation of a strip of land belonging to appellee in said county, seventy-five feet in width, from the center of Highland Bayou, and running with its meanderings four thousand four hundred and forty feet, containing seven and one-half acres. The application alleged that the railroad company was then operating nearly five hundred miles of railroad, and it was essential for its operation and running that it should have an abundant supply of fresh water to be used in the boilers of its locomotives. That, with this object in view, it had constructed a dam across Highland Bayou, about thirteen miles from the city of Galveston, at a point where it owned the land on one side to the middle of the bayou, and Tacquard owned the land on the other side to the middle of the bayou, and that the dam thus constructed created a reservoir of fresh water ample for the purposes of operating its locomotives. That at the time of building the dam and creating said reservoir it obtained the consent of the said Tacquard for so doing; but that he had lately, to wit, about the 1st day of September, 1883, revoked said license and notified it to remove the dam.

Tacquard filed objections and protest. The county judge appointed commissioners, who, having duly qualified and given proper notice, proceeded to hear the parties, and made their report to the county judge on the 4th of June, 1884, awarding $500 damages for the condemnation. Before the award was made the railway company filed a written agreement to the effect that it would not fence more than five hundred feet running from the dam up the stream, and covenanted that Tacquard and his heirs should have free use of the water collected by the dam, and free access to the same for their stock, and asked that the agreement be made a part of the decree to be rendered in the proceedings, and it was accordingly so reported by the commissioners. Tacquard filed several objections to the report of the commissioners, only two of which need be stated, viz.:

1. That the county court had no jurisdiction of the proceeding. 2. That the stream for a portion of which the condemnation was sought was a navigable one, and therefore not subject to condemnation for the purpose desired. The trial resulted in a verdict and judgment for Tacquard. *Held:* Jurisdiction over condemnation proceedings in the case of railroad corporations seeking to take land for corporation purposes is expressly conferred by statute upon county courts, without regard to the amount in controversy, and without regard to whether such proceeding is to establish a servitude upon land, or may involve a trial of title to land, or may be a suit to recover land. [R. S. title 84, ch. 8.] This jurisdiction is not conferred by the constitution, but is in conflict with those provisions of that instrument which define the jurisdiction of district and county courts. [Const. art. V, secs. 8–16.] Looking alone to these provisions, we would hold that the statute conferring such jurisdiction upon the county court is unconstitutional. But there is another provision in the constitution which must be regarded in determining the validity of this statute; that is, section 22 of article V, which provides that "the legislature shall have power, by local or general law, to increase, diminish or change the civil and criminal jurisdiction of county courts." Under this broad grant of power, we think the legislature did not exceed its constitutional authority in conferring upon the county courts the jurisdiction in question. This court has in a number of cases recognized the jurisdiction of said courts in such cases, but this is the first case in which the question has been directly presented.

§ **142.** *Navigable stream; cannot be condemned where the purpose is to obstruct it; construction of statute with reference to.* The avowed and only purpose sought to be accomplished by the condemnation of the land is to enable the railroad company, to erect and maintain a dam across Highland Bayou, so as to furnish a reservoir of fresh water for the use of said company in operating

its engines.   In the same chapter which provides for the right of way for railroads, and for the condemnation of lands for corporation purposes, it is provided, that nothing in said chapter contained "shall be so construed as to authorize the erection of any bridge, or any other obstruction, across or over any stream or water navigable by steamboats or sail vessels, at the place where any bridge or other obstruction may be proposed to be placed, so as to prevent the navigation of such stream or water." [R. S. art. 4172.]   If then, Highland Bayou, at the place sought to be condemned, is a navigable stream within the meaning of this provision, it is not subject to condemnation for the purpose designed.   It would be unlawful and a penal offense to obstruct the navigation of said stream, by the erection or the maintenance of a dam across it.   [P. C. art. 404, Selman v. Wolfe, 27 Tex. 68.]   The provision quoted furnishes its own definition of a navigable stream.   It is any stream navigable by steamboats or sail vessels — that is, any stream capable of being used as a means of passage for such craft.   The vessels named are well known and need no definition. They are of various dimensions and construction.   The statute does not require that they should be of any specified size, tonnage or make to constitute the stream, they may navigate a navigable one.   If they be steamboats or sail vessels, within the common acceptation of those terms, they are within the terms and meaning of the statute.   We have no need to, and would not be justified in looking beyond the statute to find the definition of a navigable stream.   It matters not what may be a navigable stream as defined at common law, or by the supreme court of the United States, or other courts, or by other statutes.   The definition furnished in this particular statute must control in this case, because it has special reference to the subject-matter.   It is plain and needs no explanation.   The learned trial judge instructed the jury in this statutory definition, and this was sufficient without attempting to elucidate further.   There

was ample proof that the bayou, at the point sought to be condemned, was a stream capable of being, and had actually been navigated by both steamboats and sail vessels.

February 17, 1886.                                    Affirmed.