## GULF, COLORADO & SANTA FE RAILWAY COMPANY V. S. H. MEADOWS.

### Decided May 19, 1909.

**1.—Railroads—Obstruction of Navigable Streams.**

A railroad company, even though chartered by the State and authorized to construct bridges across rivers and other waters, is not thereby authorized to obstruct the navigation of such waters even while building or repairing its bridges.

**2.—Same—Destruction of Private Property.**

A railroad company would not be authorized to destroy rafts of timber floating down a navigable stream, in order to avert a threatened danger to a bridge being erected by the company. Such destruction if it could be justified at all must be on the ground of absolute necessity, as to which no opinion is expressed.

**3.—Navigable Streams—Bridges—Authority to Build.**

No one has authority to build a bridge across a navigable river entirely within the limits of this State without the concurrent permission of the State and Federal Governments.

**4.—"Repairing"—"Construction"—Distinction.**

To tear down an old wooden bridge and place in its stead a new steel structure is to build a new bridge and not to repair an old one.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*J. W. Terry* and *F. J. & R. C. Duff*, for appellant.—It appearing and being undisputed that the railroad was built and constructed under a charter and the laws of the State of Texas, it had a right to bridge in a proper and skillful manner all streams, whether navigable or not, which lay between its termini as set out in its charter. Article 4426, Sayles' Statutes.

That the charter powers include the right to build bridges, see Elliott on Railroads, vol. 1, sec. 41; Elliott on Railroads, vol. 2, sec. 1057c; Fall River Iron Works v. Colony Railroad Co., 5 Allen (Mass.), 221; Hamilton v. Railroad Company, 44 Am. Rep., 451; Missouri P. Ry. Co. v. Speed, 3 C. A., 455; Rhea v. Newport N. & M. V. Ry. Co., 50 Fed. Rep., 17; United States v. Keokuk & H. Bridge Co., 45 Fed. Rep., 181; Transportation Co. v. City of Chicago, 99 U. S., 635; Union Pac. Ry. Co. v. Hall, 91 U. S., 343; Gould on Waters, sec. 137.

In the absence of affirmative action on the part of Congress, the State had the right to act. Escanaba Transp. Co. v. Chicago, 107 U. S., 678; Bridge Co. v. Hatch, 125 U. S., 1; Hamilton v. Vicksburg Railroad Co., 119 U. S., 281; United States v. Bridge Co., 45 Fed. Rep., 180.

That the Act of Congress passed in 1899, requiring a permit from the Secretary of War for all bridges over navigable streams does not apply, because the bridge was built prior to the passage of that Act. United States v. Bay Boom Co., 81 Fed. Rep., 658.

The right of a railroad company to build a bridge carries with it the right, and public policy demands, that it should be repaired when-

ever necessary. Trust Company v. Wabash Railroad, 32 Fed. Rep., 566; Gould on Waters, pp. 267 and 269, and authorities cited.

The plaintiff Fox having testified that he had no one in charge of or in control of his rafts of logs as they drifted with the current down the river, the court should have instructed the jury, as a matter of law, that such mode and manner of rafting logs was not a legal use or occupancy of the river. 1 Farnham on Waters and Water Rights, pp. 157 and 158, and authorities cited in note, p. 158.

Plaintiff's admissions, and the uncontradicted evidence of other witnesses, being to the effect that his rafts of logs were floating with the current of the river without being controlled or managed in their movements by any one, and that there was an unexpected and sudden rise in said river which was carrying said rafts against the bridge structure, and the plaintiff and his employes making no effort whatever to prevent the rafts from thus coming in contact with the bridge structure; the defendant, who was engaged in the lawful repair of its bridge, had the right to use such force as was necessary to protect its bridge from the approaching rafts, and the plaintiff could not claim to be lawfully occupying the stream with his rafts. Missouri Pac. Ry. Co. v. Speed, 3 C. A., 455.

*Crook, Lord & Lawhon,* for appellee.—The assignor of appellee was lawfully using the waters of the Neches river, a navigable stream lying wholly within the State of Texas, for the purpose of floating his rafts of logs to market, and the appellant had no right to injure or destroy said timber in order to protect its temporary bridge, notwithstanding such bridge was a lawful structure and the repairs were being made in a proper and skillful manner, and it was immaterial, so far as the liability of the defendant was concerned, as to whether the bridge was lawful or unlawful, and as to whether the work was being done in a proper or improper manner. Meadows v. Gulf, C. & S. F. Ry. Co., 107 S. W., 83; Wadsworth v. Smith, 26 Am. Dec., 525; Collins v. Howard, 18 Atl., 794; Gaston v. Mace, 5 L. R. A., 392.

Appellant's temporary bridge was an obstruction to the navigability of the Neches river, and it was shown that neither the G. B. & K. C. Railway Co., which originally constructed said bridge, nor the appellant, who took over the railroad and bridge from the G. B. & K. C. Railway Co., ever submitted to the Chief of Engineers and Secretary of War the location and plans for the construction of said bridge, and it also appeared that no plans were ever submitted to the Chief of Engineers or the Secretary of War before the commencement of the repairs on said bridge, and it was shown that no authority was ever given for the original construction of said bridge or for the repairs thereof, and it would have been error for the court to have instructed the jury that such bridge and the repairs thereof were lawful. 26 U. S. Stat. at Large, 454, sec. 10; 27 U. S. Stat. at Large, 88, sec. 7; 3 U. S. Compiled Stat., p. 3540, secs. 9 and 10; Montgomery v. Portland, 190 U. S., 89 (47 L. ed., 967); Lake Shore & M. S. Ry. Co. v. Humphrey, 165 U. S., 365 (41 L. ed., 747).

Appellant's temporary bridge being an unlawful structure, it was a nuisance, and appellee's assignor did not owe defendant any duty, he

being engaged in a lawful business, and even if appellee was negligent in the manner of controlling its logs, appellant could not complain, and would have no right to injure said property to protect such unlawful structure.   Selman v. Wolfe, 27 Texas, 68; Gulf, C. & S. F. Ry. Co. v. Tacquard, 3 App. C. C., 179; Gould on Waters, p. 264.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages instituted by appellee, assignee of a claim of G. E. Fox, based on the negligence of appellant in obstructing the Neches river, a navigable stream, by a temporary bridge so as to prevent the passage of rafts of logs owned by Fox on their way down the stream to Beaumont, and then unlawfully entering upon the rafts and cutting them apart so that many of the logs were lost.   Appellant answered that it was a railroad corporation engaged in the carriage of freight and passengers, and that it crossed the Neches river by means of a bridge; that it was engaged in the necessary repairs of the bridge, and that Fox carelessly permitted his rafts during high water in the river to come down against appellant's bridge, and failed and refused to assist in preventing rafts from going against the bridge, and that the logs were separated in order to prevent the destruction of the bridge.   The cause was tried by jury and resulted in a verdict and judgment for appellee for $1,253.33.

The testimony clearly showed that the Neches river, which is entirely within the State of Texas, is a navigable stream, and that it was used for the passage of steamboats or sail vessels and rafts of logs. Appellant had a bridge across the river which had been in use for years under a charter from the State of Texas beneath which rafts could pass, but had torn the old structure away and erected a temporary bridge which obstructed the stream and prevented the passage of rafts down the river.   The rafts were prevented from going against the temporary bridge by a rope stretched across the river.   Appellant, over the protest and objections of Fox, entered upon the rafts, cut them apart, and the logs drifted down the stream and numbers of them were lost, the same being of the value found by the jury.   The claim against appellant was assigned to appellee by Fox.

In the charges, whose refusal is complained of in the first and sixth assignments of error, it was assumed that appellant had the right to obstruct the river if such obstruction occurred while it was engaged in repairing the bridge, and the proposition is advanced that if the railroad was constructed under a charter from the State that it had a right to build bridges across navigable streams in a skillful and proper manner and repair them when necessary.   If it be admitted that the proposition is correct, the right to skillfully build bridges and repair them does not carry with it the further right to obstruct navigation on any stream, at least without it being indispensably necessary.

In article 4437, Rev. Stats., which was enacted long before appellant got its charter, it is provided that nothing in the law as to right of way for railroad companies "shall be so construed as to authorize the erection of any bridge or any other obstruction across or over any stream of water navigable by steamboats or sail vessels at the place where any bridge or other obstruction may be proposed to be placed so as to prevent the navigation of such stream or water."   The Neches

river was shown to be a navigable river under the terms of the statute, and the evidence showed incontrovertibly that the temporary bridge did obstruct the stream and prevent nagivation.

Not only was appellant violating the statute above cited, but it was guilty of a crime in obstructing the river, for it is provided in article 479 of the Penal Code of Texas that, "If any one shall obstruct the navigation of any stream by steam, keel or flat-boats . . . by building on or across the same any dyke, mill-dam, bridge or other obstruction, he shall be fined not less than fifty nor more than five hundred dollars." We can not uphold the proposition that a charter to a railroad company gives it the authority to set aside and trample upon the laws, both civil and criminal, of the State, and acting under the cover of those violations of law destroy the property of another that may be menacing its obstructions of a navigable stream. Building bridges across streams and obstructing the passage of commerce thereon are two different propositions, and licensing one does not authorize the other. Railroads are great highways, necessary to the highest development of our civilization, and in their passage across States and Continents will be empowered to span our streams with the necessary bridges, but while promoting their usefulness and developing the resources of the country they must not destroy the usefulness of those natural highways and arteries of commerce which are as old as time and which still form a mighty force in the advancement and progress of our country. While they may have been greatly neglected in years past, in the universal desire to build railroads in every nook and corner of the land, the laws have never failed to extend their protecting care to them and to recognize their vast importance in the machinery of our strenuous civilization. Therefore a grant to bridge a river will never be construed to authorize an obstruction to the navigation of the stream. Speaking on this subject, in 1863, it was said by the Supreme Court of Texas: "The obstruction of the navigable streams of this State had been declared a high misdemeanor, punishable by a heavy penalty. (Hart. Dig., art. 465; Penal Code, 428.) And so careful had the Legislature been in guarding the right of the citizens to use the navigable streams of the State as common highways that even the railroads, though owing to their great necessity they have at all times been fostered with the utmost liberality, were forbidden from erecting a bridge or other obstructions 'across, in or over any navigable stream so as to prevent or unreasonably impede the navigation thereof.'" Selman v. Wolfe, 27 Texas, 68.

The same contention was being made in that case that is being made in this, and the court, after discussing the well-settled policy of the State in regard to its navigable streams, said: "Did the Legislature intend by the private Act for the benefit of the appellants to change this long-settled policy, and repeal these general public laws so far as they might be applicable to the Angelina river above said bridge? If such was the intention of the Legislature they have not manifested it by an express and unequivocal declaration indicating their purpose. And if such of these laws as have direct reference to this stream shall be held to be repealed, and the general policy upon this subject with reference to it must be abrogated, we shall have to

draw these conclusions as matters of inference and deduction from the supposed conflict between the provisions of this private Act and the pre-existing laws. It can not be said, however, upon a fair and just construction of this private Act, that there is any necessary conflict between it and the previous statutes to which we have adverted. There is nothing in the law, nor was there anything brought to light by testimony during the progress of the case, inducing the supposition that appellants might not without difficulty have constructed under their charter such a bridge as would not have obstructed or interfered with the navigation of the river as it had previously been customarily and habitually used. But if it were otherwise, and .we were forced to seek the .legislative intention by a construction of its different enactments upon the subject, there would be but little difficulty in arriving at the conclusion that it was not their intention to authorize appellants to obstruct the navigation of the river." That language was used in a case where a special charter had been granted to build a toll bridge across the Angelina river, and it must apply with greater force to a corporation endeavoring to justify the obstruction of a navigable stream on the ground that it had been granted a charter to build a railroad between two points, and in order to do so it was compelled to bridge streams, and acted under that implied authority to build bridges.

The Texas case is in line with the decisions of other courts of the Union. In the case of Hamilton v. Vicksburg, S. & P. Railroad Co., 119 U. S., 280, it was said: "In the case at bar no specific directions as to the form and character of the bridges over the streams on the line of the railroad were prescribed by the Legislature of the State. The authority of the company to construct them was only an implied one from the fact that such structures were essential to the continuous construction of the line. Two conditions, however, must be deemed to be embraced within this implied power: One that the bridges should be constructed so as to insure safety to the crossing of the trains, and the other that they should not interfere unnecessarily with the navigation of the streams.".

So in the case of Southern Railway Co. v. Ferguson, 59 S. W., 343, the Supreme Court of Tennessee held: "The question, therefore, in such a case is, has the Legislature, while giving authority to build a bridge, made it lawful for the company to so construct it as to prove either all the time or at recurring periods an obstruction to craft adapted to its navigation? This question, plaintiff in error insists, is answered by its charter. Upon referring to that, however, it is found that the authority thus given is simply 'to build bridges.' The character of such bridges is not defined, nor are the names of the streams mentioned to which this authority is to be applied. Can there, then, be implied from this general authority 'to build bridges' the power to construct them as either to destroy or else to interfere seriously with the passage of water craft upon such internal streams as may be crossed by the company in the extension of its line of road? We think not."

It is not claimed that the obstructions were not only of a temporary character, but absolutely necessary in order to make repairs on the bridge, but the whole defense was based on a claim of right under

the charter to obstruct a navigable stream. But if such defense had been pleaded and proven, and could avail under our statutes, it would not have justified the destruction of the property of Fox in order to protect property the menace of which had been created by the acts of the owner. It was so held on a former appeal of this case by the Court of Civil Appeals of the Sixth Supreme Judicial District, 48 Texas Civ. App., 466. If under the statutes of Texas a railroad company can paralyze the commerce on inland waters for a number of days under a plea of necessity in making repairs, to which doctrine we do not find it necessary to commit ourselves, this would not authorize it to destroy the property of citizens lawfully being moved along the public highway, because it might injure its obstructions, and, if it assumes any such extraordinary power it will be held to make just compensation. Not even the Sovereign State can take the property of its humblest citizen, no matter how great the necessity, without just compensation, and the proposition will not be seriously entertained, that a corporation, one of its creatures, can indulge in the destruction of the property of another because it may possibly interfere with some right which it has arrogated to itself, or which may have been granted to it by the Act of its creation. If the obstructions were absolutely necessary in order to repair the bridge and appellant was authorized to erect them and protect them from rafts or other craft using the highway, it did not have the right to carry its protection of its own property to the extent of destroying the rafts or other craft, and in this case it was shown that the rafts of Fox were not pressing against the bridge, and were being held off of it by means of ropes. If the destruction of the property is to be justified at all, it must be on the ground of absolute necessity, and the facts fail to disclose it in this case. We do not commit ourselves, however, to the doctrine that the destruction of the property of another, being lawfully used, can be justified on the ground that it became necessary to destroy it in order to save the property of the destroyer.

It can make no difference that Fox did not accompany the logs down the river. They arrived safely at a point above the bridge of appellant, and Fox was there and assumed control of them.

We have considered this question as though appellant was acting under full sanction of the law in rebuilding its bridge, but it was not, even though proceeding under a charter granted by the State of Texas. In section 9 of an Act of Congress of 1899, as amended in 1900, page 3540 U. S. Comp. Stats., it is provided that it shall not be lawful to construct or commence to construct any bridge, and other structures named, over any navigable river and other waters named, without consent of Congress and after the plans for the structure have been submitted to and approved by the Chief of Engineers and Secretary of War; but it is further provided that such structures may be built over rivers and other waterways wholly within the limits of a single State if the location and plans are submitted to and approved by the Chief of Engineers and the Secretary of War. Appellant did not comply with that statute. It is clear that under the terms of that statute no one can build a bridge across a navigable river entirely within the limits of one State without the concurrent permission of

the State and national government. It was so held in regard to a similar statute, not so clearly expressed, by the Supreme Court of the United States. That court said: "We hold that, under existing enactments, the right of private persons to erect structures in a navigable water of the United States that is entirely within the limits of a State can not be said to be complete and absolute without the concurrent or joint assent of both the general and State governments." Montgomery v. Portland, 190 U. S., 89.

Appellant in its pleading and brief claims that it was repairing an old bridge, but the truth of the matter is that it tore down an old wooden bridge and placed in its stead a new steel structure. It was engaged in the construction of a new bridge, as much so as though no other bridge had ever spanned the river. It would not matter when the original bridge was constructed, whether before or after the enactment of the Federal Statute, when it undertook to erect a new bridge of different construction and different material, it was subject to the provisions of the statute. Even if it could be called "repairing" to entirely destroy an old structure and replace it with a new one, appellant could not make such change without complying with the federal law. If such were not the case, the whole object of the law, the protection of natural highways against such obstructions as would hamper the commerce of the country, would be defeated.

It was not in evidence that the work was necessary and could not have been done in any other way without stopping the traffic of the road. There is no showing that the temporary bridge was indispensable, without which such bridge could not have been built, nor that the same was being constructed only for a reasonable time, nor that it was impossible to keep a passageway open for the needs of navigation. Without this showing the railroad could not excuse the obstruction on the ground of necessity, if it should be a valid excuse under any circumstances, in view of the Texas statute. (Farnham, Water and Water Rights, sec. 329; Memphis & O. Railway v. Hicks, 5 Sneed, 427.) In the case last cited a suit for damages was instituted against a railway company that had accrued by reason of temporary obstructions of navigation in the Hatchie river, in the erection of a bridge. The Supreme Court of Tennessee said: "The construction of the bridge was authorized by the charter of the plaintiff, but with the proviso, 'that the navigation of such watercourse shall not thereby be obstructed.' It is argued that this has reference only to a permanent obstruction by the bridge when completed, but not to any temporary obstructions which become necessary or convenient in the process of erection. If these were absolutely necessary and the work could not be done without, and they were only constructed for a reasonable time, the position might be maintained. But if the work could be done without the disturbance of the conflicting navigators, or if a way to pass could have been kept open, and was not, then it would be unauthorized and a public nuisance. . . . The construction contended for would require us to hold that the Legislature intended to suspend the right of navigation for the length of time that might be necessary to build the bridge, and then, when finished, if it should not impede navigation, it would fall under the sanction of the law. We are not

of the opinion that the conflicting right of navigation was to be suspended at all, not even during the erection."

In this case it is not pretended that the work could not have been done without obstructing the river, but that if the manner of construction had not been used the traffic on the railroad would have been interfered with. The position of appellant is more radical than that of the Tennessee railroad, for it not only contends that it had the right to obstruct navigation while building its bridge, but had the right to so handle craft that approached its obstructions as to cause a partial destruction of them. We can not accede to the proposition. The judgment is affirmed.

*Affirmed.*

Writ of error refused.