### GEORGE BARNES v. THE STATE.

No. 2689.          Decided March 11, 1914.

Rehearing denied May 20, 1914.

**1.—Intoxicating Liquors—Soliciting Orders—Cold Storage—Validity of Laws.**

The statute making it unlawful to solicit and take orders for intoxicating liquors in local option territory without license, as well as the one for keeping and maintaining a cold storage where intoxicating liquors are kept for others without license, are valid. Following Edmanson v. State, 64 Texas Crim. Rep., 413, and other cases. Davidson, Judge, dissenting.

**2.—Same—Club—Soliciting Orders for Intoxicating Liquors.**

Where the evidence showed that the members of the Elks' Lodge organized an auxiliary club for the purpose of obtaining intoxicating liquors for their members in local option territory, and whereby they evaded the law against soliciting orders for intoxicating liquors, and also keeping the same in cold storage, a conviction for these offenses was sustained. Davidson, Judge, dissenting.

**3.—Same—Case Stated—Soliciting Orders for Intoxicating Liquors.**

Where said club was organized, a place rented, bar-room fixtures installed, a porter employed who was to fill the place of bar tender, and the members agreed among themselves that each one who desired intoxicating liquors should write his name on a slip of paper, place it in an envelope with the amount of money for the amount of liquor he desired and drop the envelope in a box, from which it was taken by said bar tender, the liquor ordered· by him· and a card issued to each member, showing the amount of liquor he was entitled to, etc., the person so ordering said liquors without license for soliciting such orders violated the law under chapter 20 of the Acts of 1909. Davidson, Judge, dissenting.

**4.—Same—Cold Storage—Club—Subterfuge.**

Where a member of 'a club bought the ice, paid the rent and porter hire, received the beer at the depot, hauled the same to the rented place, and there placed the same on ice, and there kept the same for members contributing the money for its purchase, etc., he rendered himself guilty under the cold-storage statute.  Davidson, Judge, dissenting.

**5.—Same—Cold Storage—Accommodation.**

Where defendant claimed that he ordered the intoxicating liquors and ,kept the same in cold storage as an accommodation for members of a certain club, but the facts showed that he did so as a member one week, with the understanding that some other member of the club would do the same for the next week, and another the week after, etc., he violated both the spirit and letter of the cold-storage statute, and the soliciting-orders statute.  Davidson, Judge, dissenting.

**6.—Same—Statutes Construed—Constitutional Law.**

Chapter 20 of the Acts of 1909, levying a tax upon the business of selling liquor by soliciting and taking orders therefor in local option territory, and also levying a tax upon persons, firms, etc., pursuing the business of operating a cold storage in local option territory is constitutional, and is not an act the effect of which is to license the sale of intoxicating liquors in territory where this is prohibited.  Distinguishing State v. Texas Brewing Co., 157 S. W. Rep., 1166.  Davidson, Judge, dissenting.

**7.—Same—Legislative Intent—Sale—Taking Orders for Liquor.**

In passing chapter 20 of Act of 1909, it was not the intent of the Legislature to license the sale of intoxicating liquors in local option territory, but the intent and purpose of the Legislature was to levy a heavy tax on those who pursued the business of taking orders for the sale of intoxicating liquors in prohibition territory, because the transfer of title takes place at the point where the order is accepted and filled and delivered to the carrier outside of said prohibition territory.

**8.—Same—Statutes Construed—In Pari Materia.**

Where the same Legislature, not only passed the Act taxing the business of soliciting and taking orders for intoxicating liquors in prohibition territory, but also passed the Act making it a felony to pursue the occupation of selling intoxicating liquors in prohibition territory, as well as making it a felony to make a single sale of such liquors in such territory, all these statutes must be considered in pari materia and must be treated as having formed in the legislative mind a connected whole, though considered by the Legislature at different dates.  Following Ex parte Schmidt, 2 Texas Crim. App., 196, and other cases.  Davidson, Judge, dissenting.

**9.—Same—Sale—Soliciting—Statutes Construed—Supreme Court of Texas.**

If it be intended by the Supreme Court of Texas, in the case of State v. Texas Brewing Co., *supra*, to hold, as contended by appellant, that the law levying a license fee on those making sales by soliciting and taking orders of intoxicating liquors in prohibition territory, would authorize one to engage in the sale of such liquors in said territory, this court can not concur in such construction, as the sale is not where the order is solicited, but at the point where the order is filled and delivered to the carrier, and this was the evil the Legislature sought to correct.  Davidson, Judge, dissenting.

**10.—Same—Court of Criminal Appeals—Supreme Court.**

While this court has the utmost respect for the ability and learning of the members of the Supreme Court of Texas, yet this court is of equal dignity to the Supreme Court and has final jurisdiction in all criminal matters, and the soliciting and taking of orders. for the sale of intoxicating liquors in prohibition territory without paying the fee therein fixed is a penal offense ,and a

matter coming under the jurisdiction of this court, which declares the same to be constitutional. Davidson, Judge, dissenting.

**11.—Same—Legislative Intent—Evil Intended to Be Corrected.**

The evil to which the legislative mind was directed in the passage of chapter 20 of the Acts of 1909 was the one that had grown up wherever prohibition had been adopted, towit, the soliciting and taking orders for intoxicating liquors to be filled by licensed dealers elsewhere to be shipped into prohibition territory; this intention is made manifest by the Act itself as well as by the other Acts passed by the same Legislature making it a felony to pursue the occupation of selling intoxicating liquors as well as making a sale in prohibition territory. Following Edmanson v. State, 64 Texas Crim. Rep., 413, and other cases. Davidson Judge, dissenting.

**12.—Same—Sale—Soliciting.**

This court does not hold that defendant was guilty of selling intoxicating liquors in prohibition territory, but holds that he is guilty of soliciting and taking orders therefor in prohibition territory, and also of keeping the same in cold storage for others without paying the license fee.

Appeal from the County Court of Harrison. Tried below before the Hon. Geo. L. Huffman.

Appeal from a conviction of soliciting and taking orders for intoxicating liquors in prohibition territory without license, and also of engaging in the business of operating cold storage in local option territory without license; penalty, a fine of $6000 and ninety days imprisonment in the county jail.

The opinion states the case.

*J. H. T. Bibb* and *S. P. Jones* and *Bibb & Scott,* for appellant.—On question of unconstitutionality of law: State v. Brewing Co., 157 S. W. Rep., 1166; dissenting opinion in Edmanson v. State, 64 Texas Crim. Rep., 413, 142 S. W. Rep., 887.

On question that the acts of defendant did not come within the provisions of what is commonly known as the statute prohibiting the sale of liquor by soliciting orders therefor: Jones v. State, 60 Texas Crim. Rep., 611, 132 S. W. Rep., 934; Golightly v. State, 90 S. W. Rep., 26; Rigsby v. State, 142 S. W. Rep., 901; Clay v. State, 65 Texas Crim. Rep., 402, 144 S. W. Rep., 280; Jones v. State, 66 Texas Crim. Rep., 403, 147 S. W. Rep., 251; Lafrentz v. State, 59 Texas Crim. Rep., 464, 125 S. W. Rep., 32; Short v. State, 91 S. W. Rep., 1087; Winslow v. State, 98 S. W. Rep., 241; Hood v. State, 34 S. W. Rep., 935; Wright v. State, 34 S. W. Rep., 935; Rector v. State, 90 S. W. Rep., 41.

On question of keeping and operating a cold storage: Standford v. State, 16 Texas Crim. App., 331; Halfin v. State, 18 id., 410; Wells v. State, 18 id., 417; Merritt v. State, 19 id., 435; Williams v. State, 23 id., 499, and cases above cited.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was prosecuted under complaint and

information containing two counts, one charging him with soliciting and taking orders for intoxicating liquors, the other for keeping and maintaining a cold storage, a place where intoxicating liquors were kept for others.

Appellant waived a jury and submitted his case to the court, and he was found guilty on both counts. The validity of both of these laws has heretofore been passed on by this court, and both have been sustained. (Edmanson v. State, 64 Texas Crim. Rep., 413, 142 S. W. Rep., 887, and Ex parte Flake, 67 Texas Crim. Rep., 216, 149 S. W. Rep., 146.) After a careful review of this question we see no reason to change our views as to the validity of these laws. So the only question presented by this record is, does the evidence show that appellant has been guilty of violating these laws.

The evidence would show that when prohibition was adopted in Marshall some members of the Elks' Lodge at that place organized an auxiliary society, the purpose of which was to obtain and keep for their own use intoxicating liquors. A plan was adopted which, it may be said, in behalf of those joining this auxiliary society, they did not think would be in violation of the law, but their good faith in this matter can not avail them, for if they were mistaken it would be a mistake of law and not a mistake of fact. They employed attorneys to devise for them a scheme or plan whereby they could obtain and keep intoxicating liquors on hand to be used by them in such quantities and at such times as they desired. But it appears to us that in an effort to evade the law, instead of doing so, a plan was devised that would be in violation of almost every law we have regulating and prohibiting the sale of intoxicating liquors, and if this scheme could be lawfully carried out our prohibitory laws instead of being denominated prohibitory, should be labeled "laws to enable liquor to be sold without any regulation and without paying any tax."

The society was organized, a place rented, bar-room fixtures installed, a porter employed, who was to fill the place of bar-tender in the ordinary saloon. No orders were solicited in words, but they agreed amongst themselves they would place a locked box on the end of the bar counter, and each member who desired intoxicating liquor should write his name on a slip of paper, place in an envelope the amount of money he desired to expend that week for liquors, and drop the envelope in the box. It was first stipulated that a secretary should be elected, who would carry the key to this box, and would take out the name, money, etc., and order the liquors. When it was received by the society the secretary would then issue to him a card entitling him to the amount of liquor he had ordered, to be drunk when he pleased during that week. The evidence would show that only beer has been ordered, and if a man placed in a dollar, he would get a ticket entitling him to twenty glasses of beer, and so on, the beer always being calculated at 5 cents a glass, the same as the price at a regular saloon. The secretary was to take the money, figure the cost of rent, ice, etc., for one week, deduct this amount, and

then order beer in bulk with the remainder of the money, and when received, keep it on ice, and have it dealt out to the holder of the ticket by the porter when called for. It is claimed if the beer did not hold out a man lost that much of his ticket, but if there was more beer than the ticket called for, then it was drunk indiscriminately by the members of the society free. In this wise a regular beer saloon was maintained by the members of the society and they could get their ice cold beer on tap at any and all times. However, the evidence would show that no secretary was elected, and the first year it was operated Mr. Clark, who was an officer of the lodge, attended to all the duties supposed to be performed by the secretary of the society; carried the key to the box, once weekly took out the money, calculated the expense, and then ordered beer with the remainder; issued tickets to those contributing the money, and had the porter keep it on ice and serve the members. When he ceased to be an officer appellant took over the business for one week and attended to it, and since then it has been understood and agreed that some member of the society should do so weekly. The only pay or consideration that he was to or would receive would be that if he attended to it one week, some other member would voluntarily attend to the business the next week. But each and every one was informed that if he desired intoxicating liquors it was only necessary to place the money in the box, with his name, and it would be forthcoming the next week. The placing of this box on the bar counter, with the understanding that the beer would be ordered, was but an invitation to do so, as much as if express personal solicitation had been made. It was an attempted evasion of the law, while the very thing to be done was what the law prohibited. He took the orders for beer out of the box, ordered the beer, and had it delivered to the person giving the order. He violated not only the express letter of the law, but its spirit and intent as well.

Again he says, that taking a portion of the money they placed in the box, paying the rent and porter hire with it, buying the ice, etc., receiving the beer at the depot, having it hauled to the rented apartment, and there placed on ice, and kept for those contributing the money, would not render him guilty under the cold storage statute. He claims he did all this as an accommodation, but the facts show that he did so one week, with the understanding that some other member of the auxiliary society would do the same for him the next week, and another the week after, etc. We are of the opinion these acts violate both the spirit and letter of the cold storage statute. Ray Clark testified in behalf of appellant that he was with appellant when he opened the box, and he and Mr. Barnes made out a list of those who had placed money in the box, and the amount each had placed in there; that there was $26.50 taken out of the box by Mr. Barnes; that they took out $5 for rent, $1.80 for ice, $3.25 for express, $1 for gas, 35 cents for telephone, and 10 cents for exchange, leaving $15, and with this appellant ordered three half barrels of beer, and gave to the men contributing the money tickets call-

ing for a glass of beer for each 5 cents contributed.  The express agent testified:  "'I am the agent for the Wells Fargo Express Company in the City of Marshall.  This company does a general express business and brings liquor to Marshall, and this is the liquor book which I have with me.  It contains a complete record of our shipments.  Yes, it shows shipments of liquor on the first day of April, 1913, and shows that Mr. George Barnes received a half barrel of beer from Palestine, Texas.  On page 78 it shows that on the 2nd day of April Mr. George Barnes received two half barrels of beer from Palestine, and Mr. Barnes signed for both of these shipments.  Yes, there is a shipment to Mr. Barnes on page 99, that is on April 4th.  Two half barrels of beer from Palestine, Texas, on page 116, there is a shipment of two half barrels of beer from Palestine, Texas, it was signed for by Mr. Barnes, this was on April 5th."  When Mr. Clark was asked about the other shipments shown to have been received by Mr. Barnes during this week, he testified: "No, the club did not order more than fifteen ($15) dollars worth of beer, the other that was ordered, the club had nothing whatever to do with, but it was dispensed with the same apparatus and the same porter. The first three half barrels cost us fifteen ($15) dollars or five ($5) dollars per half barrel and after that was gone the Elks Lodge donated the five ($5) dollars and bought another half barrel.  There wasn't any tickets issued or used for this half barrel, and Mr. Barnes or the porter signed for it for the express company.  I don't remember what time it was ordered, but it was some time during the week.  Yes, the half barrel that the express company's books show, under date April 1st, was the beer which was ordered by telephone; on Wednesday we received two more half barrels and my recollection is that we wrote for this; we also received two more half barrels on Friday.  I am pretty sure that was ordered by mail, that the two half barrels received on Saturday was ordered by mail also, but shipped at different times.  Sometimes it was ordered shipped as we needed it and sometimes it is not.  Yes, we issued tickets to those parties who deposited the money that week, and after the three half barrels or the fifteen ($15) dollars worth was used up by those parties who had tickets, then any one who came up there drank up the other beer that was ordered after that.  It was on tap free to the members of the Elks Lodge, as the lodge had contributed the five ($5) dollars to pay for it.  The other three half barrels that were received that week was ordered by individual members of the Elks Lodge, and the social club had nothing to do with that.  I think that the club's beer had gave out and some of the members wanted some more beer, and a crowd got together and each contributed some money and ordered the other three half barrels.  Mr. Barnes ordered it for them and he received it there at the lodge rooms."  So it is seen that appellant not only ordered the beer for the society, but also three half barrels of beer besides the amount the $15 and $5 rent paid for.  The record also discloses he had it carried to the apartment; had it there kept on ice, and dispensed by the porter.

Vol. 75 Crim.-13

Without going further into the facts, we think the court was justified in finding appellant guilty, and the judgment is affirmed.

*Affirmed.*

DAVIDSON, Judge, dissents.

### ON REHEARING.

#### May 20, 1914.

HARPER, Judge.—Appellant has filed a motion for rehearing herein, and presented it in a way to deserve, and it has received our most thoughtful consideration.

In his first assignment he raises a question not presented in his original brief, and not raised in the trial court, yet it is a fundamental question and he is entitled to have it considered. He contends: "The court erred in affirming the judgment in this case because chapter 20 of the Acts of 1909, levying a tax upon the business of selling liquor by soliciting and taking orders therefor in local option territory, and also levying a tax upon persons, firms, etc., pursuing the business of operating a cold storage in local option territory, is unconstitutional and void." If the Act in question is violative of any provision of the Constitution of this State, of course it is void, and no one should be punished thereunder, and this is a question that we think can be raised at any stage of the proceedings. Appellant states he is aware· of the decisions of this court in the cases of Edmanson v. State, 64 Texas Crim. Rep., 413, 142 S. W. Rep., 887, and Ex parte Flake, 67 Texas Crim. Rep., 216, 149 S. W. Rep., 146, in which we sustained the constitutionality of the Act in question, but he says he does not understand that the statute was directly attacked on the ground of its invalidity by reason of the fact that it is an Act the effect of which is to license the sale of liquor in territory where it is prohibited. If this was the proper construction of the Act we would readily agree with appellant that the Act in question was unconstitutional. Appellant cites us to the case of State v. Texas Brewing Co., 157 S. W. Rep., 1166, a decision by our Supreme Court (Justice Hawkins at the time entering a dissent), as sustaining his contention, and we frankly admit if that court intended to hold that the Act licensed the sale of liquor in prohibition territory, which construction is placed on the opinion in question by appellant, and such opinion is correct in so holding, then its conclusion would be unavoidable; but does the opinion so hold, and if it does, did the Supreme Court properly construe the intent and purpose of the Legislature in enacting that law?

The Act in question reads:

"In all counties, justice precincts, towns, cities or other subdivisions of a county where the qualified voters thereof have by a majority vote determined that the sale of intoxicating liquors shall be prohibited therein, there is hereby levied upon all firms, persons, association of persons and corporations that pursue the business of selling or offering for sale any intoxicating liquors by soliciting or taking orders therefor

in any quantities whatsoever, in any such county, justice precinct, town, city or other subdivision of a county, an annual State tax of four thousand ($4000) dollars, and each county, and also each incorporated city or town may levy an annual tax not exceeding two thousand ($2000) dollars in any such county or incorporated city or town where such business is pursued."

It is a matter of common knowledge in this State that prior to the adoption of this Act in all territory where prohibition had been adopted, liquor dealers residing outside of such territory had adopted the method of sending their drummers and agents into such territory to "solicit orders for the sale of such liquors," and when such persons were prosecuted for transacting such business this court had held that the sale did not take place *where the order was solicited,* although it contemplated a delivery, but the *sale took place where the order was received.* In Bruce v. State, 36 Texas Crim. Rep., 53, this court, in an opinion by Judge Hurt, approved the following rule of law announced in Black on Intoxicating Liquors: "It is generally held that where a person living or doing business in one State sends his agent into another State to solicit orders for goods, and the agent there takes orders and sends to his principal's place of business, and the latter fills the orders, and without any special arrangement as to the manner and place of delivery, delivers them to the carrier in his own State, to be transported at the expense of the purchaser to the latter's place, the place of sale is in the State where the agent's principal does business."

In the case of Merriweather v. State, 48 Texas Crim. Rep., 80, in an opinion by Judge Davidson, this court held that where an agent of a liquor dealer doing business in Waco, McLennan County, sent his agent into Hill County (a prohibition county), the agreed facts stating that "appellant approached the witness and personally solicited him to give him an order for whisky to be sent from the liquor house of E. P. Gates at Waco to the witness at Hillsboro, for which liquor house appellant was then acting as agent in Hillsboro; that witness consented to give the order—the appellant handed witness a printed order to sign—he signed it and handed it back to the appellant; witness did not mail the order, and furnished no postage to send it, and the whisky so ordered was to be shipped to him at Hillsboro the next day, and it came accordingly. The evidence showed that on other occasions appellant solicited and took a number of orders from witness, and various witnesses testified to similar transactions: *Held:* This *constituted a sale* in Waco and not a sale in Hillsboro. And the opinion says: 'Such has been the holding in this State in an unbroken line of decisions, and such is the holding of the Supreme Court of the United States.'"

In Ex parte Massey, 49 Texas Crim. Rep., 60, 92 S. W. Rep., 1086, this court held, speaking through Judge Davidson: "It is not the law, if a party solicits or takes an order in a local option district to deliver intoxicants in such district, that it constitutes a sale," citing Weldom v. State, 36 Texas Crim. Rep., 34; Keller v. State, 87 S. W. Rep., 669; James v. State, 45 Texas Crim. Rep., 592, 78 S. W. Rep., 951; Sedg-

wick v. State, 85 S. W. Rep., 813; Parker v. State, 85 S. W. Rep., 1155; Joseph v. State, 86 S. W. Rep., 326; Luster v. State, 86 S. W. Rep., 326; Dupree v. State, 91 S. W. Rep., 578; Newberry v. State, 44 S. W. Rep., 843.

In Keller's case, supra, this question is discussed at length in an opinion by Judge Davidson and the authorities collated. In that case the court was discussing the statute that had been passed by the Legislature which provided, "that in all contracts of sale and shipment of intoxicating liquors from any point within this State, where the terms of said contract is 'collect on delivery' that the same is and shall be a sale where said goods are delivered and paid for; and providing further that where *orders are solicited and such order is subsequently filled,* the sale shall be construed to have been made *at the place where such order was solicited.*" In passing on that statute this court said:

"Now it will be noted that until the Sinclair case, supra, was decided, in November, 1903, the Texas Reports, criminal and civil, so far as we have been able to ascertain, furnish no dissenting opinion from the rule announced in Bruce, Freshman, and that line of cases. So, until more than two years after this Act of the Legislature, it was unquestionably the law, without dissent, that the sale was at the point of shipment, and not at the point of destination, and appellate courts in this State had never questioned that rule. The passage by the Legislature of the above Act can not but be regarded as an express recognition that the rule of law was so well and thoroughly settled and recognized that the sale was at the point of shipment that it required legislation to change it; else this Act was totally unnecessary. By the passage of this Act that body undertook to set aside the well-settled law as understood from the beginning in Texas. It is not only an express recognition by the legislative body that such was the law as to the place where the sale occurred generally, but it is further an express recognition of the fact that in passing the Act they were culling from this general law, and making an exception thereto, sales of intoxicating liquor. They also thoroughly understood that they were leaving by this Act the law as settled in regard to all other sales except intoxicating liquors. Not only so, but that Act is further an express recognition of the fact by that body that the sale of all intoxicants should be under the law as it had been always, except where that sale occurred by virtue of a C. O. D. contract or shipment. We have held this Act unconstitutional, and upon a review of the question we have been confirmed in the correctness of that conclusion. The provision of the Constitution in regard to local option only authorizes the people of a county, a justice precinct, city or town, etc., to prohibit the sale of the intoxicants 'within the prescribed limits'; that is, the limits of the territory in which the law has been voted into operation. They could vote on no other proposition, except the prohibition of the sale of the intoxicants 'within the prescribed limits' or given territory, because this is the extent of the constitutional authority. The inclusion of this matter is the exclusion of all others. This would prohibit the Legislature or the people voting on local option prohibiting

the sale outside the 'prescribed limits.' Therefore, if the sale occurs outside the local option territory, the Legislature has no authority to prohibit the purchaser from carrying such intoxicants into the prohibited territory. The question is one only of sale within the local option limits. The Constitution does not make or undertake to make contracts between individuals, nor does it interfere with the right of contract, nor does it undertake to impair the obligation of contracts. It simply prohibited the sale within such territory."

It is thus seen that the Legislature passed an Act declaring that "where an order is solicited and subsequently filled that the sale shall be at the place where the order was taken," and this court, through Judge Davidson, in an exhaustive opinion, held such Act unconstitutional and violative of both the State and Federal Constitutions, and yet our Supreme Court, in June, 1913, in the case cited by appellant, State v. Texas Brewing Co., supra, if it is to be construed as contended for by appellant, says such an Act is not unconstitutional, and that *it is the law* even without the Legislature so declaring, for it says this law which levies an occupation tax on the business of "making of sales by soliciting and taking orders therefor" necessarily includes the right to deliver the liquor in the county where the order is taken, and therefore the sale is in the prohibition county, and the Legislature is without authority to license the sale of liquor in prohibition territory.

To the proposition that the Legislature is without authority to "license the sale of intoxicating liquor" in territory where prohibition has been adopted (except for the purposes the law authorizes) we readily agree, and do not think that anyone will question that this is the law. Yet we do not think this was the intent nor purpose of the Legislature in passing the Act levying a heavy tax on those who pursued the business of taking orders for the sale of liquor in prohibition territory. This court in an unbroken line of decisions has held and still holds that this is not a sale in the prohibition territory, but that the transfer of title takes place at the point where the order is accepted and filled and delivered to the carrier for transportation to the person who gave the order. The Legislature being confronted with the decisions of this court that they had no authority to declare that the sale was at the point where the order was taken and where it was contemplated the goods should be shipped, and being confronted with the known conditions, that so soon as prohibition was adopted liquor dealers established agencies in the prohibition territory to solicit, take and forward orders for intoxicating liquors, and by such means effectively annulling, or at least impairing the efficiency of the prohibition laws and thereby thwarting the will of the people who adopted the law; and being further confronted with the proposition that soliciting and taking order establishments were often used as a cloak to cover up the illegal sales of intoxicating liquors, sought to regulate and control, if not prohibit, the business of soliciting and taking orders for intoxicating liquors in prohibition territory. And as said by the Supreme Court of the United States in the case of Delemater, 205 U. S., 93, the soliciting and taking of orders for the sale of

intoxicating liquors is an accessory business which the State has the right to control or prohibit in prohibition territory since the passage of the Wilson Act by Congress. For a full discussion of this question see the able opinion of Chief Justice White in that case.

The Thirty-first Legislature not only passed the Act in question levying a $4000 license fee on the business of soliciting and taking orders; it also passed an Act making it a felony to pursue the occupation of selling intoxicating liquors in prohibition territory punishable by imprisonment in the penitentiary for not less than two nor more than five years, and making a single sale of intoxicating liquors a felony punishable by imprisonment in the penitentiary for not less than one nor more than three years. (Session Acts, 1909, pp. 284 and 356.)

To say that the Legislature intended in the statute licensing the soliciting and taking orders to license the sale of liquors in the prohibited territory, and then say that one who does so do was guilty of a felony and should be imprisoned in the penitentiary, would be to attribute to them an absurdity of which no sane body of men would be guilty. Sutherland on Statutory Construction says (sec. 218): "It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject is once clearly ascertained and its general intent, a key is found to all its intricacies—general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent." Again in section 288 he says: "Where enactments separately made are read *in pari materia,* they are treated as having formed in the minds of the enacting body parts of a connected whole, though considered by such body at different dates. Such principle is in harmony with the actual practice of legislative bodies, and is essential to give unity to the laws, and connect them in a symmetrical system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in several parts and provisions. For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and so far as still in force brought in harmony." 1 Kent's Com., 463-4; State v. Williams, 13 S. C., 558; State v. Baltimore R. R. Co., 12 Gill & J., 399, 433; Wakefield v. Phelps, 37 N. H., 295; Mayor v. Howard, 6 Har. & J., 383; Church v. Crocker, 3 Mass., 21; Holbrook v. Holbrook, 1 Pick., 254; Forqueran v. Donnally, 7 W. Va., 114; Earl of Ailesbury v. Patterson, 1 Doug., 28; Harrison v. Walker, 1 Ga., 32; Coleman v. Davidson Academy, 1 Cooke (Tenn.), 258; State v. Bell, 3 Fred. L., 506; Henry v. Tilson, 17 Vt., 479; Fort v. Burch, 6 Barb., 60; Ranoul v. Griffie, 3 Md., 54. Again he says in section 292: "The object sought to be accomplished exercises a potent influence in determining the meaning of not only the principal but also the minor provisions of a statute. To ascertain it fully the court will be greatly assisted by knowing, and it is permitted to consider the mischief intended to be suppressed, or the necessity of any kind which induced the enact-

ment." Ruggles v. Illinois, 108 U. S., 526; Big Black, etc., v. Com., 94 Pa. St., 450; Dodge v. Gardner, 31 N. Y., 239; Clark v. Janesville, 10 Wis., 136.

In Am. & Eng. Ency., volume 28, page 620, the rule is said to be, "In arriving at the intent of the Legislature in enacting a statute, not only must the whole statute and every part of it be considered, but where there are several statutes in *pari materia,* they are all, whether referred to or not, to be taken together and one part compared with another in the construction of any material provision. . . . Especially does this rule apply to statutes passed at the same session of the Legislature. If such statutes are in *pari materia* they must be construed together, and if possible, all must be allowed to stand, and effect must be given to each of them, regard being had to the intention of the Legislature. So contemporaneous legislation, not precisely in *pari materia* with the statute to be construed, may be referred to on the question of intent. Not only may contemporaneous and prior statutes be considered in construing a given act, but a subsequent statute may often aid in the interpretation of the prior one."

In Cyc., volume 36, under title "Construction of Statutes," it is said: "Every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object it is proper to consider the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one; and the statute should be given that construction which is best calculated to advance its object, by suppressing the mischief and securing the benefits intended. . . . In the construction of a particular statute, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law. The endeavor should be made by tracing the history of legislation on the subject to ascertain the uniform and consistent purpose of the Legislature. With this purpose in view, therefore, it is proper to consider, not only the acts passed at the same session of the Legislature, but also acts passed at prior and subsequent sessions."

When our Supreme Court was first organized, in the case of Fowler v. Poor, Dallam, 401, Chief Justice Hemphill said: "It is our duty to construe all statutes in relation to the same subject matter in such a manner that they will stand together and have concurrent efficiency."

In Taylor v. Hall, 71 Texas, 213, Chief Justice Gaines, speaking for our Supreme Court, said: "It is a rule in the interpretation of statutes that all acts relating to the same subject matter may be considered. We must read the Act in question in the light of former legislation," citing Fowler v. Poor, supra, and a number of other cases by our Supreme Court; also Sedgwick on Statutory Law, 247; Bishop on Statutory Crimes, sec. 86, and cases cited.

In Scoby v. Sweatt, 28 Texas, 713, the Supreme Court held, speaking through Chief Justice Moore, "It is universally admitted principle that statutes upon the same subject must be construed together and with reference to each other. If it can be done consistently with their pro-

visions, effect shall be given to all enactments on the subject. This legislative intent is to be ascertained and followed. Where there is apparent conflict, general intention is limited and controlled by special intention."

In Hanrick v. Hanrick, 54 Texas, 101, p. 109, the Supreme Court held: "There is no doctrine in relation to the construction of statutes more certainly settled than this, that all acts in relation to the same subject matter are to be taken in *pari materia* and considered as one act," citing Scoby v. Sweatt, supra; Neill v. Kosse, 5 Texas, 32; Cannon v. Vaughn, 12 Texas, 402; Street v. Commonwealth, 6 Watts & Serg., 209; Bank v. Commonwealth, 10 Barr., 448; Brown v. Com'rs, 21 Pa. St., 42; Commonwealth v. Herrick, 6 Cush., 468; Williams v. Potter, 2 Barb. (S. C.), 316; Potters' Dwarris Stat., 189. See also Bryan v. Sundberg, 5 Texas, 417; Selman v. Wolfe, 27 Texas, 69; Keenan v. Perry, 24 Texas, 253; Bonner v. Hearne, 75 Texas, 242; Lewis v. Aylott, 45 Texas, 190; Duncan v. Taylor, 63 Texas, 645; Kampman v. Tarver, 87 Texas, 491; Schendell v. Rogan, 94 Texas, 585. These citations from our Supreme Court could be continued at length, but we deem it unnecessary, and will now refer to a few of those of our own court so holding. In Ex parte Schmidt, 2 Texas Crim. App., 196, this court held: "It is a well settled rule of construction of statutes, and for the arriving at the legislative intention, that all laws in *pari materia*, or on the same subject-matter, are to be taken together in order to arrive at the result. All acts in *pari materia*, said Lord Mansfield, 'are to be taken together as one law.' Our Supreme Court says that the same Legislature is supposed to be actuated, in all that it does, by the same mind, and to have at all times had the same object and policy, and that it will not change its mind from day to day during the same session, and nothing short of expressions so plain and positive as to force upon the mind an irresistible conviction will justify a court in presuming that it was the intention of the Legislature that their acts passed at the same session should abrogate and annul one another. The decent respect due a co-ordinate department of the government would seem to forbid that such a presumption be indulged by the courts. Cain v. State, 20 Texas, 355."

In Mock v. State, 11 Texas Crim. App., 56, this court held: "In pursuance of the well settled rule of construing statutes that, in order to determine the legislative intent, it is proper to consider all the statutes in *pari materia*, we will look to all the laws in force on the subject in order that we may arrive at a proper construction and application of these portions of the penal laws by which those who fail to perform the duties required of them by the general law become amenable to criminal prosecution."

In Walker v. State, 7 Texas Crim. App., 245, this court said: "The object, and only object of judicial investigation in regard to the construction of doubtful provisions of statute law is to ascertain the intention of the Legislature which framed the statute. Every interpretation

that leads to an absurdity ought to be rejected. Every legislative act must have a reasonable construction."

In Ex parte Gregory, 20 Texas Crim. App., 210, this court said: "It is provided in our statute that 'in all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy.' (Rev. Stats., art. 3138, subdiv. 6.) And our Penal Code provides that 'every law upon the subject of crime shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects.' (Penal Code, art. 9.) It will be perceived from the provisions of our statute above quoted, that they are in accord with the rules of construction applicable to ordinances. They contemplate a reasonable construction, that is, a construction which will give effect to the intention of the legislative power enacting the law, and in interpreting the law all reasonable intendments which help to sustain and make the law operative are to be indulged and weighed by the court."

These citations and excerpts might be continued on down to the present day, both from the decisions of this court and the Supreme Court, but they sufficiently demonstrate the rule of construction that has always and does now prevail in this State, and with those rules of construction before us, if it is intended by the Supreme Court in the case of State v. Texas Brewing Co., to hold, as contended by appellant, that the law levying a $4000 license fee on those making sales by soliciting and taking orders therefor in prohibition territory, would authorize one to engage in the sale of such liquors in prohibition territory, we can not concur in such construction, but think it wholly wrong. As said hereinbefore, in territory where local option was adopted, and the sale of liquor prohibited, dealers licensed in territory where the sale was permitted, had adopted the policy of securing agents in prohibition territory, or by sending their agents in such territory to solicit orders for intoxicating liquors, and fill such orders by shipping to the one who gave the order. Our court, and the Supreme Court, in the cases above cited, hold that the sale is not where the *order is solicited*, but at the point where the *order is filled* and delivered to the carrier. This was the evil confronting the Legislature, and the evil for which they were seeking a remedy—the regulation, if not the prohibition of soliciting and taking orders in prohibition territory to be filled where the sale of liquor was licensed, and the Legislature had no thought of licensing the sale of liquor in prohibition territory, and to give such construction to their language would be doing violence to their intent and purpose and the language of the statute in question. To make it plain that such was not their intent and purpose, it is only necessary to note that the same Legislature increased the punishment for making a single sale of intoxicating liquor in the prohibited territory—making it a felony and punishable by imprisonment in the penitentiary, and to further emphasize that fact, it will be noticeable that this same Legislature, for the first time, made it an offense to pursue the business of selling such

liquors in the prohibited territory, punishing such offense more severely than for making a single sale. Taking these three Acts and construing them together as one Act, as all the authorities both in this State and out of it say should be done, we do not think that anyone can reasonably conclude that it was the intent and purpose of the Legislature, in fixing a license fee on soliciting and taking orders for the sale of intoxicating liquors, to license the sale of such liquors in such territory. It was not the intent of the Legislature to license the sale of such liquors in the prohibited territory, but in addition to imprisoning one in the penitentiary if he did do so, they decided to regulate and control the accessory business of soliciting and taking orders in such territory, if not prohibit it by making the license fee so high that no one could afford to pay it, but if anyone should take out the license, to require an application to be filed with the county clerk that he might be known, and the territory in which he would engage in soliciting orders, the better to enable those entrusted with the enforcement of the law to prohibit sales in such territory.

Not only under the well known rules of statutory construction above quoted would it do violence to the intent and purpose of the Legislature to hold that they by this Act intended to license sales of liquor in the prohibited territory, and violence to the language by them used in the statute, but when we consider that this court and the Supreme Court in an unbroken line of decisions have held and still hold that when one solicits an order for intoxicating liquor in prohibition territory, that the sale takes place where the order is filled and delivered to the carrier, with which decisions the Legislature was familiar, to say that they intended by this Act to *license sales* in prohibition territory, and for that reason the statute was unconstitutional, would be to attribute to them an unreasonable intention, and one which, in the light of the opinions of this court and the Supreme Court, as to the place of sale when an order is taken, would be an absurd intent. The statute is not subject to such construction, and we can hardly think the Supreme Court intended to so hold, but as such construction of their opinion is contended for by appellant, we have discussed it from that viewpoint, and must say if it does so hold we can not follow it. And while we have the utmost respect for the ability and learning of the members of the Supreme Court, and rely upon and follow their opinions in matters of civil law, yet this court has final jurisdiction in criminal matters, and we must follow our judgment. That court is of equal dignity with this court, and their decisions are final in all matters of construing the civil statutes, yet the Constitution of this State has made this court a court of final and supreme jurisdiction in the construction of criminal statutes, and the enforcement of the law against crime. The soliciting and taking of orders for the sale of intoxicating liquors in prohibition territory without paying the fee therein fixed was made a penal offense by the Legislature in this Act in section 5 thereof, and punishable as therein stated. As to the wisdom of enacting this law, it is not our province to discuss nor decide, for in the exercise of the powers conferred on

them by the Constitution, the Legislature has seen proper to enact this law, and we can not declare it unconstitutional by giving to the language of the statute a strained construction, and one it is not susceptible of in the light of all the opinions of this court, that a sale did not take place in the prohibited territory by soliciting or taking an order for intoxicating liquors in such territory. It has been held by this court that whenever a legislative Act can be so construed as to avoid conflict with the Constitution, such construction will be adopted by the courts. (Ex parte Mabry, 5 Texas Crim. App., 93.)    Again it is held: "In construing legislative Acts, courts must so interpret them as to harmonize their provisions with the Constitution if possible." (Ex parte Murphy, 27 Texas Crim. App., 492.)    And our Supreme Court has so held in Pickle v. Finley, 91 Texas, 484, wherein Chief Justice Gaines said: "It is a well settled rule of construction that if an Act of the Legislature be capable of two constructions, one of which conflicts with the Constitution, and the other of which does not, the latter must prevail. It is the duty of the courts to construe every Act of the Legislature as to make it consistent if possible with the provisions of the Constitution."

What evil was there which confronted the Legislature at the time this Act was passed?    They had passed an Act punishing those who made sales of liquor in prohibition territory, and the same Legislature that passed this Act increased the punishment for making such sales.    The evil and only evil to which their mind was directed in the passage of this Act was the one that had grown up wherever prohibition had been adopted—the soliciting and taking of orders for liquors to be filled by licensed dealers elsewhere to be shipped into prohibition territory.    They were seeking to regulate and control, if not prohibit this evil, and this evil alone.    Their intent and purpose is manifest by the language of this Act alone, but if not, then certainly it is made manifest by the other Acts passed by the same Legislature.    To strike down this Act would leave unregulated and unrestrained this evil, and any and all persons could pursue it without leave or license, and thus, in a measure, at least, render ineffectual the will of those people who in their wisdom have seen proper to adopt the prohibition laws to get rid of the evils incident to the sale and use of intoxicating liquors.    While we regret to do so, yet if the construction contended for by appellant is the proper construction to give the opinion of the Supreme Court in the case of State v. Texas Brewing Co., supra, and is the one intended by the court, we think it erroneous and an improper construction of the Act of the Legislature, and this court will, as it deems it its duty, enforce its provisions against all who solicit or take orders for the sale of intoxicating liquors in prohibition territory, and we adhere to the opinions in Edmandson v. State, 64 Texas Crim. Rep., 413, 142 S. W. Rep., 887, and Ex parte Flake, 67 Texas Crim. Rep., 216, 149 S. W. Rep., 146.

We did not hold in the original opinion, and do not now hold that appellant was guilty of selling intoxicating liquors in the prohibited territory, but only that the facts showed that he was guilty of soliciting and taking orders for the sale of intoxicating liquors in the prohibited

territory, which orders the facts show when taken in the prohibition territory were forwarded by appellant to a licensed dealer in Palestine, where the sale is licensed, and by the licensed dealer shipped to appellant at Marshall, which town was in prohibition territory. Appellant received the liquor so ordered by him, and placed it on cold storage, where all those who had given orders called and got it when they desired. We agree that the authorities cited by appellant hold that this did not constitute a sale by appellant, but he was not prosecuted for making a sale of liquor in prohibition territory, but was prosecuted and convicted for soliciting and taking orders therefor.

The other questions raised were discussed in the original opinion, and we do not deem it necessary to do so again.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, JUDGE.—I will file written dissent later.

November 4, 1914.

DAVIDSON, JUDGE (dissenting).—The same question is involved in this case, as I understand it, as in the Edmanson case, 64 Texas Crim. Rep., 413. The facts, however, are very different. The statement in the Edmanson case shows that about twenty witnesses for the State testified they went to Edmanson's cold drink stand and gave him orders for intoxicating liquors. These orders were telephoned to Belton to a saloon and the whisky would come usually upon the next train. In some instances the whisky would be shipped in the name of the party ordering it and they would get it from the depot. In other instances appellant delivered the whisky at his place of business. Furness testified he was a member of the firm of Warren & Furness. They were in the saloon business, and appellant began ordering whisky from their firm in September and continued this until the following January. In September, October and November his orders averaged about ten dollars a day. During the month of December he ordered between four and five hundred dollars worth of whisky. Edmanson collected the money from all the parties from whom he took the orders and settled with the liquor dealers at Belton. Under the decisions Edmanson was pursuing the business of selling whisky in Lampasas, where his cold drink stand was situated. When he took the orders and the money and sent for the whisky, or when he sent for the whisky and took their money after the whisky reached him and he delivered it there, when ordered in his name, as I understand the decisions in Texas, this was a sale by Edmanson, and the Edmanson case was decided upon that theory.

In the instant case, however, there was a club at Marshall, a subordinate club formed in connection with the Elks Lodge. Quite a number of the members of the Elks order desired to drink beer, others did not. So they organized this subordinate club with by-laws, rules and regulations governing it. Among other matters, they would agree among themselves as to who was to order the beer. Sometimes one

member would volunteer his services for a week or such matter and then another. Sometimes the club would select a member. To get their money together for sending for the beer they placed a box in a room and each member desiring beer would put his money in an envelope and place it in that box with his name written upon the envelope. If the party desired twenty glasses of beer he would put a dollar in the envelope. In other words, the amount of money placed in the envelope would indicate the number of glasses of beer the party would desire, rating it at five cents a glass. It was agreed among the parties that this box was put there for that purpose, and they would designate some member of the club to get that money and send it to the place from which the beer was to be shipped. Appellant, a member of this club, was attending to this matter for the club at the time which covers this prosecution.

Without going further into detail, my brethren hold that appellant was, therefore, soliciting orders from members of the club. I do not understand the facts that way, nor do I believe it is a legitimate deduction or conclusion from the statement of the facts. Nor did he or any member contemplate purchasing from appellant. As a member of the club, at the instigation and request of other members of the club, he agreed for the week covering this prosecution to order beer for them. They were soliciting him rather than he soliciting them. They placed the money in the box. He did not solicit them to do it. They appointed him as their agent to take that money and order the beer. Under no possible construction fairly imposed could he be charged with soliciting orders for the sale of beer. He did not sell a single glass of beer, nor offer one for sale, nor contemplate either selling or offering for sale, and no witness, as I understand it, undertook to testify that he did. For the beer a ticket was issued to the party for the number of glasses of beer covering the amount of the money he had deposited in the box. If it was a dollar he got a ticket for twenty glasses of beer. When that was exhausted he could get no more beer until the next order, when he would have to make another deposit. Appellant sold no beer but simply gave the party a ticket indicating the number of glasses of beer he was entitled to have for the money that he had previously deposited. I do not care to make a further statement of the facts. It is also agreed that local option was in effect at Marshall, where all these matters occurred.

Appellant was prosecuted under the Act of the Legislature authorizing any person who desired to sell intoxicants by taking orders to do so by paying the tax specified in the Act of the Legislature. He was charged with a violation of this statute. Had he paid the tax, then he could have sold all the intoxicants he pleased, and take in all the orders he desired, under and by virtue of the terms of that legislative Act, according to the opinion of the majority, but because he did not pay this tax this affirmance was ordered. See Acts of 1909, page 53. That Act by its terms clearly and definitely authorized a party to sell intoxicants in prohibition territory upon payment of the tax. So that there may be

no mistake I quote the legislative Act: "In all counties, justice precincts, towns, cities or other subdivisions of a county where the qualified voters thereof have by a majority vote determined that the sale of intoxicating liquors shall .be prohibited therein, there is hereby levied upon all firms, persons, association of persons and corporations that pursue the business of selling or offering for sale any intoxicating liquors by soliciting orders therefor in any quantities whatsoever, in any such county, justice precinct, town, city or other subdivision of a county, an annual State tax of four thousand ($4000) dollars." Then follows the clause authorizing incorporated cities or towns to levy a two thousand dollar tax, which is one-half of the State tax. No fair construction can be placed on this Act except that it justifies and authorizes one on payment of the required tax to pursue the business of selling intoxicating liquors by soliciting or taking orders. That is the language of the statute. This is so understood and held in the Edmanson case. In the Edmanson case I entered my dissent for several reasons, which is shown in the dissenting opinion as reported in 64 Texas Crim. Rep., 413.

Among other grounds of that dissent, I here notice and reiterate two: First, where local option is in effect, the Legislature is powerless to authorize the sale of whisky or any intoxicant in local option territory; that it is so by the Constitution, and every decision, until the recent opinions by this court, so hold. The first case in Texas reviewing the effect of the local option law was Robertson v. State, .5 Texas Crim. App., 155. The only question in that case was whether or not the State law authorizing selling under saloon license was paramount to the local option law after the local option law had been voted into effect. Upon that question the case came to the Court of Appeals, and the court held, in accordance with the terms of the Constitution, power had been vested in the majority of the voting citizenship of the given territory to vote out the sale of whisky and it at once became the controlling law. This is so by virtue of article 16, section 20, of the Constitution; and it also held when the people had so voted the saloon must cease its selling immediately upon the local option law going into effect; that the local option law was the paramount law, and this, as I understand, has not been questioned until recently. The Edmanson case is in direct conflict with the Robertson case and the Constitution. The Robertson case was followed by a great number of cases, some of which I shall cite: Boone v. State, 12 Texas Crim. App., 184; Donaldson v. State, 15 Texas Crim. App., 24; Ex parte Lynn, 19 Texas Crim. App., 293; Robertson v. State, 12 Texas Crim. App., 541; Gibson v. State, 34 Texas Crim. Rep., 218; Rathburn v. State, 88 Texas, 281. Other courts of the Federal Union have followed the same construction. See Rauch v. Com., 78 Pa. St., 490; State v. Yewell, 63 Md., 120; 1 So. Rep., 632; Com. v. Jarrell, 5 S. W. Rep., 763; 5 Dakota, 433, 25 Fla., 347; Bagley v. State, 103 Ga., 388; Com. v. Mueller, 81 Pa. St., 127; Wheeler v. State, 64 Miss., 462; Young v. Com., 14 Bush, 161; 38 Mo., 566; Black on Intoxicating Liquors, 90 to 198.

The second proposition that I desire to here reiterate in that dissent

was, at the same session of the Legislature, at page 284, that body passed
an Act punishing a citizen for pursuing the business of selling intoxi-
cants in local option territory by confinement in the penitentiary for a
period of from two to five years.   How these two Acts can stand together
is, to my mind, incomprehensible.   It is not the law that the Legis-·
lature can license the sale of intoxicating liquors in local option terri-
tory, because the people have voted it out, and by their vote, under the
terms of the Constitution, that law became as sacred as the Constitution,
and was inviolable until the people in the same territory had again
voted on the question and repealed the law by their vote.   The Legis-
lature could not repeal it, nor could they change the status of the local
option law in the given territory.   It requires the vote of the people to
vote it in and vote it out.   This is so by all the authorities, and so
thoroughly that they need not be cited.   For both reasons this law
should be held invalid.   I do not understand how it is possible for the
Legislature to license crime or authorize the pursuit of a business in
violation of law.   This Act authorizing the selling of whisky by taking
orders in local option territory would be, if the sale occurred, in direct
conflict with the local option law, and, therefore, where the party is
pursuing that business he would necessarily be selling in violation of
the local option law.   Pursuing such business is a felony, and in many
of the counties in Texas today it is a felony to make one sale in local
option territory, without even pursuing the business of selling.   To say
that the Legislature of Texas could license crime would be imputing to
that body an act that if directly made would be to charge them with
dereliction in office.   No such motive ought to be imputed to that de-
partment of the government.   If the Legislature could license the crime
of violating the felony statute under local option law, then that body
could license crime for any other felony.   If the Legislature can author-
ize a license to a party to violate the local option law by selling intoxi-
cants, the same power could authorize the party to pursue the business
of committing robbery, arson, murder, horse stealing, etc.   These are
all felonies as is the pursuit of the business or occupation of selling
intoxicants in local option territory.

So we have the strange anomaly that an Act of the Legislature is
upheld which authorizes the sale of whisky in local option territory by
taking orders and another Act passed at the same session and by the
same Legislature, but subsequently enacted, which punishes the party by
incarceration in the penitentiary for the same selling.   It will be noticed
that the Act authorizing this manner of selling in local option territory
became effective on the 24th day of February, 1909.   The statute pro-
hibiting the pursuing of this business and affixing a penitentiary punish-
ment to it was approved on April 15, 1909, and became effective ninety
days after adjournment of the Legislature.   So it was and is the later
Act.   This latter Act was in aid of local option, because it punished the
party who pursued the business of violating the local option law with a
heavier punishment than where he was only making one sale and not
pursuing the business.   It is another singular anomaly to hold that the

State of Texas could take this money of its citizenship, authorizing him or them to do that certain thing, and at the same time incarcerate him in the penitentiary for doing the particular act which that body had authorized him to do, and for which the State had demanded and accepted his money and authorized him to do. But this is one of the many incongruities growing out of this character of legislation in recent years. I might mention another one of these incongruities. The same Legislature, at page 51, Acts 1909, enacted what is known as "Non-Intoxicating Malt Liquor" law. Under that statute the Legislature affixed a punishment, authorizing the license to the citizenship of Texas where they desired to sell non-intoxicating beer and malt drinks. This was upheld in Ex parte Townsend, 64 Texas Crim. Rep., 350. In that case I also entered a dissent showing the incongruities and incompatibilities of that Act with other Acts of the Legislature and the decisions of this court. In Moreno v. State, 64 Texas Crim. Rep., 660, my brethren, overruling a long line of cases, held that they judicially knew the term or word "beer" meant intoxicating liquors. With this view they were not satisfied, but went further and said they did not have to rest their opinion upon judicial knowledge, because the Legislature of Texas had determined what it took to constitute an intoxicant, and had defined it. In support of this they quoted an article from what is known as the Fitzhugh-Robertson saloon license law. The cited section is 34 of that Act, and reads as follows: "The term 'intoxicating liquor,' as used in this article shall be construed to mean fermented, vinous or spirituous liquors, or any composition of which fermented, vinous or spirituous liquors is a part; and all the provisions of this article shall be liberally construed as remedial in their character." It will be noticed that under the saloon law, when it comes to selling intoxicants, this provision authorizes the holder of the license to sell all of these different things whatever may have been their compound or ingredients under their saloon license, and especially confined the term "intoxicating liquors" to the saloon license Act, for it uses the term "intoxicating liquors" in the quoted section. That it did not apply to local option territory can not be gainsaid or ought not to be. I cite section 27 of the same Act wherein it provides as follows: "This article, or any of the provisions thereof, shall not be construed to be in conflict with any local option law now or hereafter to be in force in this State, and no license to any retail liquor or retail malt dealer shall be issued or shall be effective at any place where local option law is in force and operation." This expressly provides that this Act shall not be operative in local option territory, and not only so, the same provision of exclusion is made in section 18 and section 14 and section 9 and section 1 of this same Fitzhugh-Robertson Act. But my brethren in the Moreno case transferred and applied the saloon license provisions in and to local option territory, in the face of the statute and the Constitution, which provide that the local option law shall prohibit sales of intoxicating liquors. The reasons for my dissent are stated in the Moreno case, and I do not care here to review that matter, nor the reasoning for that dissent. I refer to it simply

for this reason, that in another case, in the same volume, Ex parte Townsend, supra, my brethren sustained the Act of the Legislature licensing sale of non-intoxicating liquors in same territory. In the Moreno case they held there were no non-intoxicating liquors in Texas, quoting the definition of intoxicating liquors above cited. If section 34 of Fitzhugh-Robertson Act is applied to intoxicants in local option territory, then it was a matter of impossibility that there should be any non-intoxicating malt, vinous or spirituous liquors. They would all be intoxicating without reference to amount of alcoholic body contained. So we have another incongruity: the license Act of non-intoxicating liquors upheld by my brethren, in the face of the Moreno case, which held there was no such thing in Texas as non-intoxicating liquor. I do not care to follow this further.

Then we have another singular anomaly. The statute under which appellant was indicted for pursuing the business without paying the license tax, and under which he was convicted and the judgment affirmed, was, as before stated, enacted in 1909. What is known as the Allison bill was passed in 1913, found on page 125 of the Acts of the Thirty-third Legislature and as amended on page 62, First Called Session of the Thirty-third Legislature. Under the terms of the latter Act no shipment of intoxicants could be made into local option territory, providing a heavy punishment if such shipment occurred. Under the terms of the Allison bill the only way a party could get intoxicants would be to go into the wet territory, get the intoxicants and carry same home in person. He could not ship it by common carriers. If this law is valid, and my brethren hold in the recent case of Ex parte Muse that it is constitutional, without specifying whether all of its provisions are or are not constitutional, but in a general way held it constitutional, then it repeals the Act under which appellant was convicted. If this Act is constitutional, which prohibits the shipment of whisky into local option territory, then it necessarily repealed the license law for selling by soliciting orders. The two laws are absolutely incongruous, incompatible and flatly contradictory, and the Allison bill is the later Act, and, of course, would supersede any prior conflicting legislation, if valid. The Allison bill was in full force and effect for what it is worth at the time of the affirmance of the judgment. It is too well settled in Texas to be questioned now, both by statute and decision, that where a law is repealed either at the time of the trial of a party or at the time of the decision of it in the appellate court, he is entitled to his discharge. It would be unnecessary, I think, to cite cases in support of this proposition at this late date.

I have mentioned these statutes to show the anomalous condition of legislation and decisions in regard to these various matters and how incongruous and contradictory all this legislation is and has been for some time. These different Acts place the law of Texas certainly in a very curiously absurd condition. In one Act a citizen is authorized to sell whisky by paying the license, and in another Act the same Legis-

Vol. 75 Crim.-14

lature provides that if he does so sell he shall go to the penitentiary as a felon. The saloon license Act of the Legislature which defines intoxicating liquors to include everything in which vinous, spirituous or malt liquors enter as a compound or part, was held by the majority of 'this court to apply to local option territory in the face of the statute which expressly forbids, and then sustains the law licensing non-intoxicating liquors which does contain spirituous, vinous and malt liquors. Then we have the Allison bill which wipes out and punishes for all shipment, and the affirmance of the judgment in this case for failing to get his license to *order and ship the ordered beer*. These may be classed as the beatitudes of our jurisprudence on this subject. I can not, therefore, concur with my brethren, first, because the Legislature had no authority to license the sale of intoxicants in any form by soliciting orders or any other way in prohibition territory. It would be a violation of the local option law and punished as a felony to follow that character of business or occupation. Second, the Legislature can not tax nor license crime, and, third, appellant did not solicit orders from anybody, therefore did not violate the soliciting order statute, even if it was in effect and a valid law; and did not sell or offer to sell through orders or otherwise; fourth, if as a matter of fact or law, the Allison bill is constitutional, it supplanted the other law, and appellant's case should have been reversed and the prosecution dismissed, because the law under which he was convicted was not in force at the time of the disposition of his appeal. I have not cited nor commented upon the recent decision of the Supreme Court reviewing this soliciting order statute, but I call attention to it. It will be found in 157 S. W. Rep. at page 1166. Chief Justice Brown's opinion in the case is so clear and forceful that it may be said to be unanswerable. The views expressed in that opinion are in strict accord with what I have understood the law to be and decided since the first appeal reviewing the local option clause of the Constitution of Texas. Judge Harper admits, in his opinion on rehearing in this case, that if the license authorized the sale of intoxicants in the given territory the law would be unconstitutional, but the Edmanson case does not so hold, because in that instance the party under the testimony of many of the witnesses was selling directly in violation of the local option law, and the judgment in that case was affirmed, not that he was violating the local option law but that he failed to take out license to do so. I quote in this connection from Judge Brown's opinion:

"Under such license it could by solicitation or taking orders sell and deliver intoxicating liquors in Clay County, because a sale implies a delivery of possession of personal property. Authority to pursue the business of selling intoxicating liquors in a county includes authority to deliver the liquor in that county, because the business could not be pursued if no sales were made, and no sale could be without delivery, actual or constructive. The words, 'by soliciting or taking orders,' do not limit the effect of the sale to pass title, nor do they exclude the delivery of the thing sold at the place where the business is pursued. Those words are descriptive of the method of selling. The local option.

law and the Constitution prohibited the sale of intoxicating liquors in Clay County, and the Legislature could not authorize the pursuit, by any method, of the business of selling such liquor there. The State can not levy an occupation tax on a business that, being pursued, would be a violation of the law and Constitution. Such license would not protect the licensee against prosecution for sales made under it." Of course, that business would have to be pursued in the particular county where the prosecution was had, because the statute expressly provides that before he can engage in that business he must file with the county clerk of the county in which the business is to be pursued an application in writing for license to engage therein, and shall state the county or portion of the county in which the business is to be pursued, and if within the corporate limits of any incorporated city or town, that fact shall be stated, etc., Judge Brown, commenting upon this phase of it, said: "It is beyond all question that the license must have been issued by the clerk of the county in which the business was to be pursued, and the business of selling intoxicating liquors in Clay County, by any method, being unlawful, it was not the subject of taxation by the State or county."

I have written the above on the lines indicated in my dissent, largely for the purpose of calling the attention of the Legislature to the condition of our laws and their incongruities, in obedience to the statute which requires the judges of the State to call the attention of the Legislature to such defects, conflicts and incongruities as appear to be in the way or render inefficient the enforcement of the laws.

The information includes another count against appellant charging him with a violation of the cold storage Act of the Legislature of 1909, page 53. But for the opinion written in the case by the majority, I would hardly think that to be a serious question, but it seems to have been included in the decision. Briefly stated, the substance of the facts disclose that the club, of which appellant was a member, provided suitable means for storing their beer on ice for the purpose of preserving it while they were using it. It excludes the idea that any person had access to what is termed the cold storage except the club itself or its members. It was not kept for any purpose except to store and keep on ice the property of the club. No one outside of the club ever placed any commodity on the ice, nor was anyone permitted to do so. Nothing was kept in the refrigerator nor was any offer ever made to receive anything from outsiders to be kept for storage. It was limited in its purpose exclusively to the use of the members of the club or to the club itself. If this was a cold storage plant within the meaning of the Act of the Legislature, then every refrigerator could and would be a cold storage plant wherever kept in ordinary business houses or in private families. The Act of the Legislature of 1909, page 53, provides that in all local option territory a party may pursue the business of keeping, etc., "what is commonly known as a cold storage or any place by whatever name known or whether named or not, where intoxicating or non-intoxicating liquors or beverages are kept on deposit for others, or where

any such liquors are kept for others under any kind or character of bailment (by paying) an annual State tax of two thousand dollars." As before stated, the club provided a place for the keeping on ice of their beer. It was the beer alluded to in the former part of the opinion that was shipped in for the use of the members of the club on the terms and under the plans already detailed. The testimony excludes the idea that any outsider ever kept anything in storage on this ice. Our statute provides that words and phrases used in the Penal Code shall be taken and accepted in their commonly understood meaning, unless the Legislature shall give it a special definition. So we have the general statute which provides that the term "cold storage" shall be used and understood in its common and ordinary acceptation, but the statute did not stop there; it emphasizes the fact that it must be what is "commonly known" as a cold storage, or place where these interdicted matters are kept on deposit for others. The testimony excludes a violation of the cold storage Act quoted. It was not kept for anybody except the club members where the club had provided for storing their beer. I do not purpose to follow this matter to any great length, and will cite the case of Stewart v. Atlanta Beef Co., which was a Georgia case, reported in 44 Am. St. Rep., 119, by Judge Lumpkin of the Supreme Court of Georgia. Quoting from that opinion the following language is used: "The obvious meaning of the phrase, 'doing a cold storage business,' is, carrying on the business of storing commodities in a cool place for hire or reward. It would certainly not be contended that one who, for his own comfort or convenience, kept fruits, meats, or other perishable goods in a refrigerator, box or room cooled artificially, would be carrying on a cold storage business. It would make no difference in principle if a person engaged in the sale of such articles kept by them, for the purpose of preservation until sold, in such a room or other place. The real business thus conducted would be that of a dealer in such commodities, and the method employed for storing and preserving them would be a mere incident to that business. The business of storing for hire the goods of other people is of an entirely distinct character. The difference between the two classes of business indicated is very plain, and the proposition that a dealer in goods of any kind who merely uses a cold storage receptacle for preserving his wares until sold is not engaged in carrying on a cold storage business, is so manifestly beyond contention that, to our minds, it does not admit of elaboration or discussion; and it is entirely immaterial what may be the size of the receptacle, room, or other place in which the goods are stored. We, therefore, are fully satisfied that the defendants in error were not liable to the tax imposed by the clause quoted in the first headnote, from the general tax Act passed in 1890, it appearing beyond dispute from the evidence that these parties used the cold storage process for no other purpose than to preserve their own commodities, and that they did not receive or store, for hire or otherwise, any goods whatever for other persons." The statute under consideration in the quoted case imposed a tax upon all packing houses doing a cold storage business in that State, whether carried on

by the owners thereof or by their agents. This was a provision in the Georgia statute.

The cold storage article enacted by the Texas Legislature punishes only for a violation of the license Act when the cold storage was kept for receiving deposits of others than the owners or interested parties in the cold storage. Neither appellant nor the club, or both combined, kept a "cold storage" within contemplation of the terms of the Act of 1909. This is so obviously so that it would need no discussion. Cold storage as "commonly known" means keeping such cold storage as a matter of business for hire or reward, a receptacle for storing commodities and things of that sort belonging to others, and not to the owners of the cold storage.

For the reasons indicated I have entered the above views as some of the reasons for dissenting from the majority opinion.